UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAMELA WRIGHT,
    *Plaintiff*,

v.

NANCY A. BERRYHILL,
    *Defendant*.

No. 3:17-cv-00501 (JAM)

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

Plaintiff Pamela Wright alleges that she is disabled and cannot work principally because of severe pain stemming from conditions in her back, left knee, and left arm and hand. Pursuant to 42 U.S.C. § 405(g), she seeks review of the final decision of defendant Commissioner of Social Security denying her claim for social security disability and supplemental security income. On September 14, 2017, plaintiff filed a motion to reverse or remand the decision of the Commissioner. Doc. #16. Thereafter, the Court declared a default against the Commissioner for her willful failure to comply with the Court's scheduling order and rules. Doc. #21. For the reasons stated below, I will now grant plaintiff's motion to remand.

### BACKGROUND

The Court refers to the administrative record provided by the Commissioner. *See* Doc. #14-1 through Doc. #14-11. Plaintiff filed an application for supplemental security income and disability insurance benefits on January 14, 2014, alleging a disability onset date of October 2, 2012. Plaintiff's claims were denied on July 28, 2014, and again upon reconsideration on September 16, 2014. Plaintiff then filed a written demand for a hearing.

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Sharda Singh on September 23, 2015. Plaintiff was represented by counsel. Vocational Expert

1

Dr. Courtney Olds testified at the hearing. On November 25, 2015, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social Security Act. *See* Doc. # 14-3 at 37–36. After the Appeals Council denied plaintiff's request for review, plaintiff filed this federal action.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work

2

experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alterations in original; citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ can find a claimant to be disabled or not disabled at a particular step and can make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. At step one, the ALJ determined that the plaintiff had not engaged in substantial gainful employment since October 2, 2012, the date of alleged onset of disability. Doc. #14-3 at 29. At step two, the ALJ concluded that plaintiff suffered from the following severe impairments during the relevant period: lumbar radiculopathy, left knee derangement, status post left knee arthroscopy and obesity. *Ibid.* The ALJ further concluded that plaintiff suffered from the following non-sever impairments: hypertension, mild cervical radiculopathy, left carpal tunnel, sleep apnea, status post endovenous radiofrequency obliteration of the greater saphenous vein, and anxiety. *Id.* at 30.

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 25. Specifically, the ALJ

3

concluded that plaintiff's left knee derangement and status post arthroscopy did not meet listing 1.02, which pertains to major dysfunction of a joint. *Id.* at 31. The ALJ found that plaintiff neither established that she was unable to ambulate effectively, nor established that she was unable to perform fine and gross movements effectively. *Id.* at 32. The ALJ also concluded that plaintiff's radiculopathy did not meet the criteria for listing 1.04. *Ibid.*

The ALJ then found that plaintiff had "the residual functional capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)," with the following limitations: plaintiff "can never climb ladders ropes, or scaffolds. She is limited to occasional ramps, stairs, balancing, stooping, kneeling, crouching and crawling. She is limited to frequent left upper extremity fine and gross manipulations. She is to avoid all exposure to workplace hazards, such as unprotected heights and moving machinery." *Ibid.*

In formulating this residual functional capacity (RFC), the ALJ accorded limited weight to the opinions of plaintiff's treating physician Richard Matza, M.D., that were rendered on June 8, 2015, and October 13, 2015. The ALJ accorded "some weight" to the opinion of Dr. Matza rendered on April 23, 2015, because he was her treating physician. *Id.* at 35. The ALJ discounted Dr. Matza's opinion to the extent that she did because the opinion was in the form of a checklist and plaintiff's limitations were not documented in the notes that accompanied the physician's opinion. *Id.* at 34–35 In that opinion, Dr. Matza indicated that plaintiff needed to alternate positions once an hour and that her impairments interfered with her ability to complete activities. He further opined that plaintiff was unable to walk a block at a reasonable pace on rough or uneven surfaces. *Id.* at 35; Doc. #14-9 at 52.

At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work as representative/loan clerk. Doc. #14-3 at 35. The ALJ found that the mental and physical

demands of this work were compatible with plaintiff's RFC, and the ALJ relied on the vocational expert's testimony in making this finding. *Ibid.* Having concluded that plaintiff could perform her past relevant work, the ALJ did not make any finding at step five concerning alternative employment. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act.

The Appeals Council denied plaintiff's request for review on January 30, 2017. *Id.* at 2. In denying review, the Appeals Council concluded that the additional evidence submitted by plaintiff did not provide a basis for changing the ALJ's decision. *Id.* at 3.

Plaintiff timely filed her federal civil complaint on March 27, 2017. Doc. #1. The Commissioner filed an answer July 17, 2017. Doc. #14. Thereafter, the Court entered a scheduling order setting a deadline of September 15, 2017, for plaintiff to file a motion to reverse or remand and allowing the Commissioner 60 days to respond. Doc. #15. Plaintiff timely filed her motion. Doc. #16. The Commissioner twice moved for an extension of time to respond. Doc. # 18; Doc. #20. In an order dated January 22, 2018, the Court denied the Commissioner's second motion for extension of time and entered a default against the Commissioner for willful failure to comply with the Court's scheduling order and rules. Doc. #21.

**DISCUSSION**

The Court may ordinarily "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court

5

must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart,* 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

But when the Commissioner defaults, the Court applies a more relaxed standard similar to the standard applicable in the context of a default judgment against the government. *See Marziliano v. Heckler*, 728 F.2d 151, 157–58 (2d Cir. 1984); *Alameda v. Sec'y of Health, Ed. & Welfare*, 622 F.2d 1044 (1st Cir. 1980). "A court need only decide if there is 'evidence satisfactory to the court' pursuant to Fed. R. Civ. P. 55(d) to allow for a grant of relief." *Blodgett v. Comm'r of Soc. Sec.*, 2018 WL 525992, at *3 (D. Conn. 2018). In other words, the Court's role at this point is "to determine if 'the claimant's district court brief and reference to the record appeared relevant, fair and reasonably comprehensive,' and to ensure that plaintiff's briefing does not errantly 'refer to evidence supporting the [Commissioner's] decision that was clearly substantial.'" *Ibid.* (quoting *Alameda*, 622 F.3d at 1043). The Court's focus is whether plaintiff has adduced "some evidence that the [Commissioner's] conclusions are not supported by substantial evidence." *Ibid.* The Court will not conduct a *de novo* review of the entire record in search of evidence to support the ALJ decision or "dream up arguments that the Commissioner might have made" had the Commissioner not defaulted. *Ibid.*

Plaintiff advances a number of claims of error by the ALJ. First, plaintiff claims that the ALJ's conclusion at step three that plaintiff did not satisfy the listings at 1.02 and 1.04 was not supported by substantial evidence. Second, plaintiff claims that the ALJ's RFC finding was not supported by substantial evidence, and, relatedly, that the ALJ's credibility determination as to plaintiff's treating physician was not supported by substantial evidence. Third, plaintiff claims that the ALJ's conclusion that plaintiff could perform her past relevant work was not supported

by substantial evidence. The Court concludes that, in view of the applicable standard of review, plaintiff has demonstrated that the ALJ's step three determination was not supported by substantial evidence.

Plaintiff argues that that ALJ erred when she concluded that plaintiff's right knee impairment did not meet listing 1.02 in 20 C.F.R. Part 404, Subpart P, Appendix 1. A listing 1.02 impairment is

> [c]haracterized by gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; . . . .

The regulation defines the "inability to ambulate effectively" to mean "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b(1). In addition, the regulations set forth illustrative examples of ineffective ambulation, which include, *inter alia*, "the inability to walk a block at a reasonable pace on rough or uneven surfaces." *Id.* 1.00B2b(2).

The ALJ specifically concluded that plaintiff had *not* established that she was unable to ambulate effectively. Doc. #14-3 at 32. Plaintiff, however, argues that there was specific evidence in the record that she could not ambulate effectively—specifically, the opinion of Dr. Matza that plaintiff was unable to walk a block at a reasonable pace on rough or uneven surfaces.[1]

---

[1] Plaintiff also argues that the ALJ's conclusion that plaintiff's spinal impairments did not meet the criteria set forth in listing 1.04 was not supported by substantial evidence. One of the criteria under listing 1.04 is that the underlying spinal condition must result "in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P,

7

Ordinarily, the determination "whether an individual can ambulate effectively . . . [is] based on the medical and other evidence in the case record, generally without developing additional evidence about the individual's ability to perform the specific activities listed as examples in 1.00B2b(2) and 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1 1.00B2a; *Rodriguez v. Comm'r of Soc. Sec.*, 2015 WL 5771619, at *5 (D.N.J. 2015). "However, the situation is different when there is a treating physician's opinion that the plaintiff has an inability to perform one of the specific activities listed as an example." *Smith v. Colvin*, 2017 WL 634497, at *7 (D. Conn. 2017). Indeed, plaintiff's treating physician rendered just such an opinion in an overall assessment of plaintiff's impairments dated April 23, 2015. Doc. #14-9 at 52. The ALJ accorded the overall opinion "some weight." Doc. #14-3 at 35. Nevertheless, the ALJ did not mention this evidence (or any evidence) in the ALJ's discussion of the step three finding under listing 1.02.

While it is well established that the ALJ need not address every shred of evidence in the administrative record, the ALJ may not simply ignore probative evidence from plaintiff's treating physician. *See Horbock v. Barnhart*, 210 F. Supp. 2d 125, 136 (D. Conn. 2002). Courts in this circuit have found remand to be warranted where an ALJ fails to mention parts of the record that contradict the ALJ's conclusion. *See Lopez v. Sec'y of Dept. of Health & Human Services,* 728 F.2d 148, 150–51 (2d Cir.1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him."); *Scully v. Berryhill*, 282 F. Supp. 3d 628, 637–38 (S.D.N.Y. 2017); *Gomez v. Comm'r of Soc. Sec.*, 2017 WL 1194506, at *17 (S.D.N.Y. 2017); *see also Quinones v. Colvin*, 2014 WL 6885908, at *6 (W.D.N.Y. 2014) ("Because the ALJ failed to provide an analysis of [p]laintiff's

---

App. 1, 1.04. The ALJ concluded that there was no evidence of such a condition in the record. In her brief, plaintiff has not pointed to any evidence in the record of a compromised nerve root or spinal cord.

back impairments sufficient to enable this Court to conclude that the step three finding is supported by substantial evidence, remand for further proceedings is warranted.").

I acknowledge that when an ALJ fails to adequately justify a step three determination, the ALJ's conclusion may nevertheless be sustained in circumstances where other portions of the ALJ's decision demonstrate that substantial evidence supports the ALJ's step three determination. *See A.J.H. by Mack v. Comm'r of Soc. Sec.*, 2017 WL 3669559, at *5 (N.D.N.Y. 2017) (citing *Salmini v. Comm'r Soc. Sec.*, 371 F. App'x 109 (2d Cir. 2010)). But my review of the ALJ's decision does not reveal any reliance on any evidence of record that fairly controverts the opinion evidence of Dr. Matza that the ALJ has accorded only some probative weight. For example, the fact that another consultative physician reported that plaintiff "ambulated with a quad cane in her right hand but was able to ambulate short distances without it," Doc. #14-3 at 34, hardly supports the ALJ's determination that plaintiff did not "establish[] that she is unable to ambulate effectively." *Id.* at 32.

Nor will I, in light of the Commissioner's default, scour the administrative record in search of evidence that would satisfy the substantial evidence standard ordinarily applied in social security appeal cases. *See Blodgett*, 2018 WL 525992, at *3. In fact, the new evidence submitted before the Appeals Council—which is part of the administrative record for judicial review, *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*)—shows that a radiological scan performed less than two months after the ALJ rendered her decision demonstrated "severe degenerative changes" in plaintiff's left knee and resulted in a recommendation of a total knee replacement. Doc. #14-3.[2]

---

[2] The ALJ did not address the other listing 1.02 criteria, *i.e.*, whether there was a "gross anatomical deformity," chronic pain, and "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02. But because the ALJ rested her conclusion "specifically" on the absence of evidence that claimant "is unable to ambulate effectively," Doc. #14-3 at

9

Accordingly, I will remand this case to the ALJ to consider, in light of the probative opinion evidence from plaintiff's treating physician, whether plaintiff's left knee impairment met the listing 1.02 criteria. On remand, the ALJ should consider whether plaintiff met *each* of the criteria for listing 1.02 and explain her reasoning as to why these criteria were or were not satisfied. Because I am remanding this case at step three, I need not consider plaintiff's remaining arguments, and these remaining arguments should be considered by the ALJ on remand.

## CONCLUSION

Plaintiff's motion to reverse and/or remand the Commissioner's decision (Doc. #16) is GRANTED. On remand, the ALJ should consider whether plaintiff met *each* of the criteria for listing 1.02 and explain her reasoning as to why these criteria were or were not satisfied.

It is so ordered.

Dated at New Haven this 21st day of August 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

32, I understand the ALJ to have found the other criteria to have been satisfied. Given that plaintiff required a total knee replacement shortly after the ALJ rendered her decision, my understanding of the ALJ's ruling would appear to be accurate. *See Taylor v. Barnhart*, 189 F. App'x 557, 562 (7th Cir. 2006) (finding that opinion evidence that plaintiff's severe osteoarthritis necessitated a total knee replacement supported meeting listing 1.02 criteria). In any case, the ALJ should address these criteria on remand.